No. 90-001

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

IN RE THE MARRIAGE OF

LITA F. BRONZYNSKI,

     Petitioner and Respondent,

 and

ROBERT ALAN HAGAN,

     Respondent and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

     Morgan Modine, Attorney at Law, Missoula, Montana

     For Respondent:

     Robert L. Deschamps, III, County Attorney, Missoula,
Montana
Barbara C. Harris, Deputy County Attorney, Missoula,
Montana

Submitted on Briefs: August 23, 1990

Decided: October 2, 1990

Filed:

_____
Clerk

Justice Diane G. Barz delivered the Opinion of the Court.

This appeal stems from an action to collect back child support. Lita Bronzynski (Lita) filed a URESA action in Missoula County District Court to collect child support due from her ex-husband, Robert Alan Hagan (Robert). After a hearing on the matter, the District Court concluded that petitioner Bronzynski was entitled to judgment and ordered respondent Hagan to pay back child support in the amount of $16,775 but did not find Hagan in contempt of court. Hagan appeals the lower court's judgment. We affirm.

One issue is presented for review:

Did the District Court properly enter judgment in favor of Lita Bronzynski for child support?

Lita and Robert were married in 1972. Two sons were born of the marriage. In December 1981, the Missoula County District Court granted Lita and Robert a divorce. Lita married Leroy Bronzynski (Leroy) in April 1982. Shortly after her re-marriage, Lita moved to Nebraska with Leroy and her two sons from her marriage to Robert. Lita informed Robert and his parents that she and the boys would be moving to O'Neill, Nebraska but she did not know the exact address in O'Neill. Once Lita got a permanent address in O'Neill she notified the Montana court. Robert's parents also knew of her address in O'Neill and sent presents to their grandsons and visited the family in O'Neill. Her present address and phone number have remained the same since late 1982. Robert and his new wife, Carolyn, also testified they sent the boys Christmas gifts in 1986 and 1987 which were included in packages Robert's mother mailed to

Nebraska.

According to their dissolution decree, Robert was to have paid $125 per month per child in support payments. Lita was awarded custody of the children, with visitation by Robert specifically set out if mutual agreement could not be reached. Robert consistently made payments until Lita and the boys moved to Nebraska. After April 28, 1982, Robert made only one $50 payment in July 1983.

Robert made few attempts to contact his sons. Through his attorney he did write to Lita stating he was upset about having to pay child support but not being able to see his children due to the move to Nebraska. The letter suggested summer visitation different from that set out in the dissolution order and requested Lita to pay one-half the transportation costs. The letter then stated that if Lita did not agree to the proposed terms of the visitation she should retain an attorney because Robert intended to file an action to modify the decree. Robert never followed up on the visitation nor did he call or visit the children after they left Montana.

Lita attempted at various times to enforce the decree and collect the child support due and owing. In June 1982, pursuant to Nebraska's Uniform Reciprocal Enforcement of Support Act (URESA), Lita filed a complaint and affidavit regarding nonpayment of support by Robert. The documents were certified by a Nebraska judge and sent to Missoula District Court. Lita also maintained contact with the Missoula County Attorney's office, making phone calls and personal contact. During a June 1984 conversation with a Missoula deputy county attorney about Robert being unemployed and the county therefore being unable to collect child support, there

3

was discussion regarding Leroy adopting the boys.

In August 1988, Leroy Bronzynski petitioned to adopt the boys. When Robert was notified of Leroy's pending adoption of the two boys, Robert did call the Bronzynskis' lawyer and stated that he objected to the adoption, but Robert did nothing in writing. The adoption of the boys was completed in October 1988.

On June 15, 1989, the Missoula County Attorney's Office, on behalf of Lita Bronzynski, filed a Petition for Order to Show Cause alleging Robert Hagan's failure to pay child support. A hearing was held on August 21, 1989. When questioned about his understanding regarding support and visitation, Robert testified there was no verbal agreement between Lita and him. Robert stated he did not pay child support because of an understanding they had based on "instinct" arising out of the marriage. But Robert did admit knowing that his support obligation was independent of his visitation rights and stated that he wanted to exercise visitation.

At the conclusion of the hearing the court ruled in favor of Lita. Having viewed the case in light of State ex rel. Blakeslee v. Horton (1986), 222 Mont. 351, 722 P.2d 1148, the court concluded that the facts in the present case were different from those in Blakeslee in that there was no agreement of any kind between Lita and Robert that she would not seek support if he would not exercise visitation. Therefore, the court found, the mandates of Blakeslee did not apply to the situation and Robert was not relieved of his obligation to pay child support under the equitable exception carried out in Blakeslee. The District Court ordered Robert to pay $16,775, the amount of back child support due prior to the time

4

Leroy adopted the children.

It is from this judgment that Robert now appeals.

On review this Court presumes the correctness of a district court judgment and will reverse such judgment only on a finding of clear abuse of discretion. In re Marriage of Jensen (1986), 223 Mont. 434, 438, 727 P.2d 512, 515. A reversal would be appropriate only if the district court "acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." Jensen at 438, 727 P.2d at 515 (citing In re Marriage of Perry (1985), 217 Mont. 162, 166, 704 P.2d 41, 43).

On appeal Robert contends that the District Court should have exercised its equitable power to relieve him of the obligation to pay child support because the parties to the seven-year-old dissolution decree impliedly and explicitly agreed to alter its terms. Robert argues that the agreement to alter the decree is found in the fact that for the last seven years, in return for forgoing any child support, Lita has denied Robert, as the natural father, any contact with the children. Robert further asserts that only after terminating his parental rights through the adoption of the children by her husband of the last seven years did Lita seek collection of back child support. Robert argues, because the original decree has been altered to reflect the parties' agreement, the mandates of Blakeslee should apply and Lita is equitably estopped from claiming child support.

Robert makes extensive arguments in an attempt to analogize Blakeslee to the present case. In Blakeslee the parties arrived

5

at a mutual agreement where each stayed away from the other. After fourteen years of the mother not seeking payment of child support and the father not seeking visitation, the mother filed a petition alleging the child support provided for in the dissolution decree was due. The father did not know the whereabouts of the mother or the child and never made a child support payment. The mother never made any inquiry regarding child support payments. While noting that child support payment cannot be modified retroactively (§ 40-4-208, MCA) and that child support and visitation are separate incidents with neither being dependent or conditional on the other (§ 40-5-124, MCA), the court found the mother was equitably estopped from pursuing back child support. To give the mother back child support after fourteen years of acquiescing to the implied alteration of the decree would amount to a windfall for the mother. Such result, this Court held, would be inequitable.

This case differs significantly from Blakeslee. Here, the father had made support payments initially. Here, the father knew where the children were. Here, the father's attorney wrote a letter requesting visitation and attempted to condition his payment of child support on his visitation of the boys and subsequently made a $50 support payment. Here, the mother started seeking support in 1982 and continued to seek child support. Here, there is no evidence of a mutual arrangement like that in Blakeslee-- Lita did not consent, impliedly or explicitly, to an arrangement other than payment of the child support.

The trial court obviously recognized the import of Blakeslee to this situation. District Judge Harkin discussed its relevance

6

at length and concluded <u>Blakeslee</u> does not apply.

We agree with the District Court's conclusion. <u>Blakeslee</u> does not apply in this case. Contrary to Robert's assertions that Lita now wants a windfall for herself and only sought child support after the adoption, Lita did seek child support before Leroy adopted the boys. Lita had been in contact with the Missoula County Attorney's Office since 1982. Lita discussed the possibility of adoption in a 1984 conversation with a Missoula deputy county attorney, but no adoption proceedings were begun until 1988. Robert's contention that Lita was lying in wait to secure an adoption and then proceed against him for back support are not supported by the facts.

We affirm.

_____
Justice

We concur:

_____
_____
_____
_____
Justices

7